UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

PEERLESS NETWORK, INC., et al.,

                                                 Plaintiffs,

                       -against-

AT&T CORP.,

                                                 Defendant.

-----------------------------------------------------------------X

```
┌─────────────────────────────┐
│ USDC SDNY                   │
│ DOCUMENT                    │
│ ELECTRONICALLY FILED        │
│ DOC #: _____      │
│ DATE FILED: __ 5/18/2022    │
└─────────────────────────────┘
```

15-CV-870 (VM)(VF)

ORDER
REDACTED VERSION

**VALERIE FIGUEREDO, United States Magistrate Judge:**

AT&T Corporation ("Defendant") requests to strike portions of a declaration prepared by an expert witness for Peerless Network, Inc., et al. ("Plaintiffs"). See Request for Pre-Motion Conf., ECF No. 149. Plaintiffs submitted the expert declaration in support of their motion to enforce their settlement agreement with Defendants. See Pl.'s Mot. to Enforce Settl. Agr., ECF No. 138; Decl. of James D. Webber, ECF No. 141. For the reasons that follow, Defendant's request is DENIED.

BACKGROUND

Plaintiffs sued Defendant on February 5, 2015, to collect unpaid charges for telecommunications services provided by Plaintiffs. See Compl. at ¶ 1-4, ECF No. 1. On August 6, 2018, the parties informed the Court they had entered into a confidential settlement agreement, and on August 8, 2018, the case was dismissed with prejudice pursuant to the terms of that agreement.[1] See Stip. of Voluntary Dismissal at ¶ 1, ECF No. 96; Order of Dismissal at ¶ 2, ECF

---

[1] As noted in the Order of Dismissal, despite dismissal of the complaint, the Court retained jurisdiction "solely to resolve disputes arising under" the settlement agreement. See ECF No. 98 at ¶ 1.

No. 98. Approximately two years later, on June 1, 2020, Plaintiffs sought this Court's

intervention to enforce the settlement agreement, claiming that Defendant had breached its

obligations under the agreement. See Ltr. Mot. To Enforce Settl. Agr. at 2, ECF No. 100.

Plaintiffs contend that the settlement agreement required Defendant to "██████████████

███████████████████████████████████████████████████████████████

████████████████████" a separate service agreement, which the parties signed at the same time

as the settlement agreement. Id. at 1. Under the settlement agreement, Defendant's requirement

to purchase additional services from Plaintiffs was "███████████████████████████

████████████████████████████████████████████████████████

████████████████████████" See id. at 1-2.

  In response, Defendant contended that it did not breach its obligations under the

settlement agreement, arguing, in part, that it had "purchased approximately $1.5 million worth

of a service called 'least cost routing'" and approximately $600,000 of "services related to IP

toll-free calling." See Def.'s Ltr. at 2, June 5, 2020, ECF No. 107. Moreover, Defendant argued

that Plaintiffs had not "identif[ied] any other services that [Defendant] declined to purchase." See

id. Alternatively, Defendant argued that summary enforcement of the settlement agreement was

improper because discovery was necessary into issues such as Plaintiffs' "costs to provide" a

service, "the nature and quality of services [Plaintiff] offered," and "the services and terms

offered by other providers." See id. at 3.

  On November 5, 2020, the parties submitted a joint proposed discovery schedule for

conducting discovery relevant to a motion to enforce the settlement agreement, and the Court

adopted the parties' discovery schedule on December 2, 2020. See Parties' Proposal, ECF No.

117; Minute Entry, Dec. 2, 2020, ECF No. 118.

During discovery, on March 22, 2021, Defendant served interrogatories, asking Plaintiffs to identify (1) rates and volumes of services Plaintiffs contend Defendant could have purchased from Plaintiffs but for the alleged breach (Interrogatory 8) and (2) Plaintiffs' costs and profits associated with those services (Interrogatory 9). See Def.'s Ltr. at 2, Mar. 18, 2022, ECF No. 149. In July 2021, Defendants produced 11 analytics spreadsheets to Plaintiffs that set forth "as of 11 different dates throughout the relevant two-year period," the rates charged by Plaintiffs and other suppliers of service, "broken out by the destination telephone numbers," and more than 200 spreadsheets identifying "the actual volumes of traffic" by month that Defendant sent to Plaintiffs and other service providers, which showed the "actual amounts" Defendant paid for those services. See id.

According to Defendant, Plaintiffs "promised" that the expert report of James Webber would supply the responses to Defendant's Interrogatories 8 and 9. Id. Defendant contends that it needed this information "in preparation for depositions and preparing its own expert report in rebuttal." Id. at n.2 (international quotations omitted). Plaintiffs served Webber's report on Defendant on November 19, 2021. See id. at 2. Upon inspection of the report, Defendant realized that Webber had not identified any "instance where [Plaintiffs] contended it offered the lowest rate for a service but [Defendant] did not buy" from Plaintiffs—the information requested in the interrogatories. Id. On December 1, 2021, Defendant alerted Plaintiffs to this deficiency. See id. at 2-3. During his deposition on January 10, 2022, Webber acknowledged that his report contained "no comparison of the prices offered by [Plaintiffs] to [Defendant] versus the prices offered by other suppliers." Id. at 3.

After the close of discovery, on March 11, 2022, Plaintiffs filed a motion to enforce the settlement agreement. See Pl.'s Mot., ECF No. 138. In support of that motion, Plaintiffs

submitted a declaration prepared by Webber (the "Webber Declaration"), which, as is relevant here, contains five paragraphs (the "Methodology") and a corresponding exhibit with a chart of routes ("the Chart"). In the Chart, Plaintiffs identified the "routes" where it contended that it was the "Least Cost Routing" provider, the "monthly expense" that Defendant would have incurred if Plaintiffs had serviced those routes, and the total revenues that Defendant would have received if Defendant had selected Plaintiffs as the provider on all of those routes. See Decl. of James D. Webber at ¶¶ 22-25, Ex. 2, ECF No. 146. Webber explains that he compiled the Chart using the figures in the summary pages of the 11 analytics spreadsheets produced by Defendant. Id. at ¶ 22-24. In the Methodology, Webber further explains that the "average monthly revenue" figures in the Chart were derived through addition and division of numbers contained in the analytics spreadsheets. Id. at ¶ 26.

Subsequently, on March 28, 2022, Defendant filed the instant motion, arguing that the Chart and Methodology in the Webber Declaration was untimely expert opinion that "should have been disclosed no later than the December 10, 2021 expert disclosure deadline, and before [Defendant] expended substantial resources rebutting the disclosures in the November 19, 2021 Webber Report." See Request at 2-4, ECF No. 149. Alternatively, Defendant contends that Plaintiffs should have disclosed the Chart and Methodology in response to Defendant's Interrogatories 8 and 9. See id. at 2-3. Defendant further argues that it was prejudiced by Plaintiffs' untimely disclosure, because without Plaintiffs indicating which routes Plaintiffs believed that they were the lowest cost provider, Defendant prepared its own expert rebuttal report pointing out that Plaintiffs had not "identif[ied] a single minute of traffic in which [Plaintiffs] offered [Defendant] better rates and terms than available from other third-party

providers." See id. at 3. Defendant thus seeks to have paragraphs 22-26 and Exhibit 2 of the Webber Declaration stricken. Id. at 1.

In response, Plaintiffs contend that the Methodology and Chart in the Webber Declaration is not opinion evidence under Federal Rule of Civil Procedure 26(a)(2) and therefore Plaintiffs were not required to disclose it in Webber's expert report. See Pl.'s Ltr. at 1, Mar. 21, 2022, ECF No. 153. Plaintiffs assert that the Chart is "just a table that summarizes information from the Summary Tabs" of the eleven analytics reports that Defendant produced, and that the Methodology only describes how Webber created the Chart and his "math calculations." Id. at 2-3. Plaintiffs further claim that Defendant "is not prejudiced by [Webber's] summaries of Defendant's own business records," should not be "surprised" by Plaintiffs relying on the eleven analytics reports to "identify where [Plaintiffs were] the least cost route available," and that "only [Defendant had] the information on what [rates] other carriers were offering for each particular route." Id. at 4. Both parties agree that the Chart and Methodology do not impact Webber's damages calculations. See 4/29/22 Tr. at 23-24, ECF No. 160.

On April 29, 2022, the Court held a telephonic conference at which it heard argument from the parties on Defendant's motion to strike portions of the Webber Declaration. See ECF Minute Entry, Apr. 29, 2022; 4/29/22 Tr. During the conference, Defendant explained that the data in the spreadsheets, relied on by Webber, could have been used "numerous ways" by Plaintiffs to support their claim that Defendant breached the settlement agreement, and Defendant could not have predicted that Plaintiffs would rely on a monthly average figure, using estimated volume of traffic, to establish the revenue that Plaintiffs should have received under the agreement. 4/29/22 Tr. at 6-9. Defendant claims that it would need to engage its experts to review the Chart and Methodology if it is not stricken. Id. at 9-10.

Plaintiffs countered that the Chart was not expert opinion and, in any case, the information contained therein was information only Defendants had and subsequently produced to Plaintiffs. See id. at 11-12, 27. Further, Plaintiffs contended that they did answer Interrogatory 8 by previously providing Defendant with a spreadsheet in Webber's report that identified the "prices" that Plaintiffs offered for "particular routes." See id. at 12. But Plaintiffs acknowledged that the Interrogatory also asked for additional information, such as the volume of minutes Defendant could have provided to Plaintiff, and the costs and profits associated with such services. Id. at 13-14. As to the delay, Plaintiffs explained that they did not understand the nature of the data contained in the analytics spreadsheets until a deposition of Defendant's witness taken on November 14, 2021. See id. at 14-15.

## LEGAL STANDARD

### A. Rule 26 Disclosure Obligations

Federal Rule of Civil Procedure 26 governs expert disclosures. See Fed. R. Civ. P. 26(a)(2). Rule 26(a)(2)(B) requires an expert witness to provide a written report "if the witness is one retained or specially employed to provide expert testimony in the case." As is relevant here, the written report must include "(i) a complete statement of all opinions the witness will express and the basis and reasons for them; (ii) the facts or data considered by the witness in forming them; [and] (iii) any exhibits that will be used to summarize or support them." Fed. R. Civ. P. 26(a)(2)(B)(i)-(iii). Rule 26 also imposes a continuing obligation on parties to supplement or correct expert disclosures "in a timely manner." See Fed. R. Civ. P. 26(e)(1)(A).

Rule 26(e) requires a party "who has made a disclosure . . . or who has responded to an interrogatory, request for production, or request for admission" to "supplement or correct its disclosure or response . . . in a timely manner if the party learns that in some material respect the

disclosure or response is incomplete or incorrect, and if the additional or correct information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1). A party's duty to supplement its disclosures also applies to expert witnesses. See Bozick v. Conagra Foods, Inc., No. 19-CV-4045 (LJL), 2021 WL 1198320, at *3 (S.D.N.Y. Mar. 30, 2021). As to experts, "the party's duty to supplement extends both to information included in the report and to information given during the expert's deposition." Fed. R. Civ. P. 26(e)(2).

Although Rule 26(e) imposes an ongoing obligation to supplement disclosures made pursuant to Rule 26(a), including expert disclosures, experts are "not free to continually bolster, strengthen, or improve their reports by endlessly researching the issues they had already opined upon, or to continually supplement their opinions." Sandata Techs., Inc. v. Infocrossing, Inc., Nos. 05-CV-9546, 06-CV-1896 (LLM) (THK), 2007 WL 4157163, at *6 (S.D.N.Y. Nov. 16, 2007). To that end, it is "assumed that at the time an expert issues his report, that report reflects his full knowledge and complete opinions on the issues for which his opinion has been sought." Lidle v. Cirrus Design Corp., No. 08-CV-1253 (BSJ) (HBP), 2009 WL 4907201, at *6 (S.D.N.Y. Dec. 18, 2009). The duty to supplement arises "only if the expert subsequently learns of information that was previously unknown or unavailable" and that information "renders information previously provided in an initial report inaccurate or misleading because it was incomplete." Id. If an expert's supplemental report "does not rely [on] any information that was previously unknown or unavailable to him," it is not appropriate under Rule 26(e). Id.

## B. Rule 33 Interrogatory Responses

Rule 33 of the Federal Rules of Civil Procedure governs interrogatory responses by parties to a civil action. As is relevant here, a party upon whom interrogatories are served "must

serve its answers and any objections within 30 days after being served with the interrogatories."
Fed. R. Civ. P. 33(b)(2). "To the extent an interrogatory is not objectionable, the responding
party is required to 'provide the best answer they can based upon current information in their
possession.'" Yong Biao Ji v. Aily Foot Relax Station Inc., No. 19-CV-11881 (VB) (JCM), 2021
WL 1930362, at * 2 (S.D.N.Y. May 12, 2021) (quoting Trueman v. New York State Canal
Corp., No. 09-CV-049 (LEK) (RFT), 2010 WL 681341, at *2 (N.D.N.Y. Feb. 24, 2010)). And,
as noted, Rule 26(e) imposes a duty on a party to supplement their interrogatory response as new
information "comes into [the responding party's] possession." Id.

### C. Rule 37 Sanctions

Rule 37(c) of the Federal Rules of Civil Procedure provides the applicable sanctions for a
party's late disclosures under Rule 26. Namely, Rule 37(c) explains that "[i]f a party fails to
provide information or identify a witness as required by Rule 26(a) or (e), the party is not
allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a
trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c). Rule
37(c) further provides that a court may "order payment of reasonable expenses, including
attorney's fees, caused by the failure" to disclose or "may impose other appropriate sanctions."
Fed. R. Civ. P. 37(c)(1)(A), (C).

"The purpose of the rule is to prevent the practice of 'sandbagging' an adversary with
new evidence." Ventra v. United States, 121 F.Supp.2d 326, 332 (S.D.N.Y. 2000). The burden is
on the party facing sanctions to prove that the late disclosure was harmless or that there was a
substantial justification for the delay. Schiller v. City of New York, Nos. 04-CV-7922
(RJS)(JCF), 04-CV-7921 (RJS)(JCF), 2008 WL 4525431, at *3 (S.D.N.Y. Oct. 9, 2008).
Imposing Rule 37(c) sanctions does not require a showing of bad faith by the offending party.

Design Strategy, Inc. v. Davis, 469 F.3d 284, 296 (2d Cir. 2006). However, "preclusion of evidence pursuant to 37(c)(1) is a drastic remedy and should be exercised with discretion and caution." Ebewo v. Martinez, 309 F.Supp.2d 600, 607 (S.D.N.Y. 2004). Additionally, "preclusion of an expert report can be a harsh sanction." Sandata Techs., Inc, 2007 WL 4157163, at *7. Before courts use the "extreme sanction of preclusion," they should "inquire more fully into the actual difficulties which the violation causes, and must consider less drastic responses." Outley v. City of New York, 837 F.2d 587, 591 (2d Cir. 1988).

When determining whether to preclude late discovery, expert or otherwise, "courts must consider: (1) the reasons for the delay in providing evidence; (2) the importance of the evidence precluded; (3) the prejudice to the opposing party from having to address the new evidence; and (4) the possibility of a continuance" (i.e., the Softel Factors). Cedar Petrochemicals, Inc. v. Dongbu Hannong Chemical Co., 769 F.Supp.2d 269, 278 (S.D.N.Y. 2011) (citing Softel, Inc. v. Dragon Med. & Sci. Commc'ns, Inc., 118 F.3d 955, 961 (2d Cir. 1997)). Courts have "broad discretion to determine the nature of any sanction that should be imposed under Rule 37, based on all the facts of the case." Ritchie Risk-Linked Strategies Trading (Ir.), Ltd. v. Coventry First LLC, 280 F.R.D. 147, 156 (S.D.N.Y. 2012) (internal quotations and citation omitted).

### DISCUSSION

Defendant contends that the Chart and Methodology in the Webber Declaration constitute expert opinion evidence that should have been disclosed in Webber's expert report or by the close of expert discovery on December 10, 2021. See ECF No. 149 at 2-3. Plaintiffs, conversely, argue that the Chart and Methodology are not expert opinion evidence but, rather, summary of information that was in the 11 analytic spreadsheets provided by Defendant. See ECF No. 153 at 2-3; see also 4/29/22 Tr. at 26-28. The Court need not resolve whether the Chart and

Methodology constitute expert opinion evidence, because the information contained in the Chart and Methodology was information sought by Defendant's Interrogatories 8 and 9 and which Plaintiffs never previously provided. See 4/29/22 Tr. at 13-14.

Having failed to timely respond to Defendant's interrogatories, the Court next considers whether the Softel Factors weigh in favor striking the Chart and Methodology from the Webber Declaration. An analysis of those factors yields a mixed result. The first factor, the reason for Plaintiffs' delay in supplying the Chart and Methodology, favors preclusion of the evidence. Plaintiffs have not adequately explained why they could not have produced the Chart and Methodology earlier, either as an answer to Defendant's interrogatories, or as a supplemental expert report during the discovery period. Plaintiffs claim that they did not understand the nature of the information contained in the analytics spreadsheets, upon which Webber's Chart and Methodology are based, until a deposition that occurred on November 14, 2021. See 4/29/22 Tr. at 14-15. But Plaintiffs received the spreadsheets from Defendant in July 2021 and, as Defendant points out, Plaintiffs could have asked questions about the data in those spreadsheets. Id. at 21. Further, even if the significance of the data in the spreadsheets did not become apparent to Plaintiffs until a deposition taken on November 14th, Plaintiffs offer no explanation for why they did not point to that data earlier, in December 2021, when Defendant alerted Plaintiffs to the fact that they had not yet identified the routes where it contended that it offered the lowest rate for a service that Defendant did not buy from it. See ECF No. 149 at 2-3; 4/29/22 Tr. at 21-22.

The second factor, the importance of the evidence, weighs in favor of not precluding introduction of the Chart and Methodology. The information in the Chart and Methodology supports Plaintiffs' contention that Defendant breached its obligation under the settlement agreement because the information shows that there were services for which Plaintiffs were the

least-cost provider. Indeed, Plaintiffs rely on the Chart in their motion to enforce the settlement

agreement to argue that Defendant could have sent an average of $██████ per month in revenue

to Plaintiffs, thereby satisfying their obligation under the settlement agreement to purchase $█

██████ in services from Plaintiffs. <u>See</u> Pl.'s Mem. of Law in Support of Mot. at 16-17, ECF No.

144; <u>see also</u> 4/29/22 Tr. at 4, 16-17, 23-24.

      The third factor, the prejudice to the opposing party, favors preclusion of the subject

evidence. Defendant asked for this information in two interrogatories served on Plaintiffs on

March 22, 2021. And although the information underlying the Chart and Methodology was

information contained in the analytic spreadsheets belonging to Defendant, <u>see</u> ECF No. 153 at

4; 4/29/22 Tr. at 11, 15, Defendant has persuasively explained why they needed Plaintiffs to

specifically identify which routes of traffic from those voluminous spreadsheets Plaintiffs

contend they should have received from Defendant. Using the data in the spreadsheets, Plaintiffs

generated a monthly average revenue figure to show the revenue that could have gone to

Plaintiffs but for Defendant's alleged breach of the settlement agreement. Although the

spreadsheets contained "estimated volume" information, other information produced by

Defendant identified "the actual traffic" that Plaintiffs and other providers received from

Defendant during the relevant period. As defense counsel argued at the April 29, 2022 hearing,

the data in the spreadsheet could have been used by Plaintiffs in various ways, and Defendant

could not have predicted that Plaintiffs would rely on a monthly average figure, based on

estimated volume, to support their allegation that Defendant had breached its obligations under

the settlement agreement. <u>See</u> 4/29/22 Tr. at 6-9. Moreover, had Plaintiffs provided this

information earlier, Defendant could have used its experts, for instance, to "eliminate or to

reduce" the volume of traffic identified by Plaintiffs. <u>See</u> <u>id.</u> at 5-6, 20.

The fourth and final factor, the possibility of a continuance, favors not striking the Chart and Methodology from the Webber Declaration. The fourth factor "requires the Court to consider the appropriateness of granting a continuance, rather than defaulting to the harsh remedy of dismissal." Gidora v. Howmedica Osteonics Corp., No. 16-CV-5774 (KMK), 2019 WL 1129127 at *4 (S.D.N.Y. Mar. 12, 2019). Striking the Chart and Methodology is a particularly harsh result here, given the potential relevance of the information to the ultimate issue of whether Defendant breached the settlement agreement and because other remedies will adequately mitigate any prejudice to Defendant from the untimely disclosure of this information. During the hearing, counsel for defendant indicated that Defendant would need more time to engage its expert and prepare a response to the Chart and Methodology in the Webber Declaration and Plaintiffs' counsel did not oppose giving Defendant more time to prepare its opposition to the motion to enforce the settlement agreement. See 4/29/22 Tr. at 9-10, 24, 28. Because a continuance to allow Defendant additional time to re-engage its experts and file its response is an adequate remedy, the Court declines to strike the Chart and Methodology from the Webber Declaration. See Raymond v. Mid-Bronx Haulage Corp., No. 15-CV-5803, 2017 WL 1251137, at *10 (S.D.N.Y. Mar. 31, 2017) (finding preclusion of evidence "unwarranted" given "the availability of a brief and limited continuance" and the fact that the evidence at issue was "critically important") (citing Bastys v. Rothschild, 154 F.App'x. 260, 263 (2d Cir. 2005)).

Defendant has also requested that Webber's deposition be reopened so as to permit counsel an opportunity to question Webber about the Chart and Methodology. See 4/29/22 Tr. at 25. Defendant's request to reopen Webber's deposition is denied. In his Declaration, Webber explained where he found the numbers used in the Chart and his methodology in preparing the Chart. See Webber Decl. ¶¶ 22-26. The data in the Chart was taken directly from the analytic

spreadsheets provided by Defendant, with no modifications. See Webber Decl. ¶¶ 23-24. And using that data, Webber then performed "simple math," see 4/29/22 Tr. at 26, to calculate an average monthly figure. Defendant has thus not shown why Webber would need to be deposed about the calculations in the Chart.

The Court also has authority to shift discovery costs to Plaintiffs, "so as to avoid burdening Defendant[ ] with costs [it] would not have incurred, but for Plaintiffs' non-compliance with the discovery rules." Ritchie Risk, 280 F.R.D at 162. In that regard, the court has broad discretion to impose sanctions, including reasonable expenses and attorneys' fees when a party fails to "disclose information required by [Fed. R. Civ. P.] 26(a) or (e) without substantial[ ] justification." Tse v. UBS Financial Services, Inc., 568 F.Supp.2d 274, 321-22 (S.D.N.Y. 2008) (awarding fees and costs incurred in connection with the sanctions motion, and explaining that "[c]ourts in this circuit have often awarded attorney's fees to sanction a party who disregards [its] discovery obligations") (collecting cases); Zubulake v. UBS Warburg LLC, 229 F.R.D. 422, 437 (S.D.N.Y. 2004) (imposing Rule 37 sanctions, including fees and costs associated with making the motion); Sec. & Exch. Comm'n v. Ripple Labs, Inc., No. 20-CV-10832 (AT) (SN), 2022 WL 1154348, *2 (S.D.N.Y. Apr. 19, 2022) (requiring plaintiff to pay defendant's costs associated with motion to strike where court found that plaintiff had improperly filed a supplemental expert report). Plaintiffs could have timely responded to Defendant's interrogatories and have failed to provide an adequate explanation for their untimely disclosure of the Chart and Methodology. Further, Plaintiffs' untimely disclosure necessitated the filing of the instant motion to strike by Defendant. Accordingly, pursuant to Rule 37 and the Court's inherent powers, Plaintiffs are ordered to pay Defendant's reasonable attorneys' fees and costs incurred in preparing this letter motion to strike.

**CONCLUSION**

For the foregoing reasons, the Defendant's letter motion to strike the Chart and Methodology in the Webber Declaration is DENIED. The parties are directed to provide the Court with a proposed schedule for the filing of Defendant's opposition to Plaintiffs' motion to enforce the settlement agreement. That schedule should account for the additional time Defendant requires to re-engage its experts and prepare its response. Lastly, Plaintiffs are ordered to pay the reasonable attorneys' fees and costs incurred by Defendant in preparing the instant letter motion.

**SO ORDERED.**

DATED:

New York, New York
June 10, 2022

_____
VALERIE FIGUEREDO
United States Magistrate Judge