USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 1/2/2024

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

PEERLESS NETWORK, INC., et al.,

                    Plaintiffs,

          -against-

AT&T CORP.,

                    Defendant.

-------------------------------------------------------------------X

15-CV-00870

**ORDER**

**VALERIE FIGUEREDO, United States Magistrate Judge.**

On June 1, 2020, Plaintiffs Peerless Network, Inc. and its wholly owned subsidiaries named in this action (collectively, "Peerless") sought permission to move for summary judgment against Defendant AT&T Corp. ("AT&T") to enforce a settlement agreement the parties had executed on July 31, 2018. See ECF No. 100. On January 31, 2023, I issued a Report and Recommendation ("R&R"), recommending that the Honorable Victor Marrero deny Peerless' summary judgment motion and dismiss the proceeding. See ECF No. 225. On April 11, 2023, Judge Marrero adopted the R&R in its entirety. See ECF No. 240 at 1. On April 25, 2023, AT&T filed the instant motion for attorneys' fees and costs pursuant to Federal Rule of Civil Procedure 54(d). See ECF No. 243. For the reasons set forth below, AT&T is entitled to an award of attorneys' fees in the amount of $1,218,044; an award of costs in the amount of $18,973.76; and an award of expert fees in the amount of $426,305.90.

# BACKGROUND[1]

On June 1, 2020, Peerless sought this Court's assistance in enforcing a 2018 settlement agreement it had with AT&T, contending that AT&T had breached the terms of that agreement by failing to use its best efforts to purchase additional telecommunications services from Peerless. See ECF No. 100. Over 27 months, the parties engaged in substantial fact and expert discovery to address Peerless's claim. See ECF No. 244, Decl. of Brian A. McAleenan ("McAleenan Decl.") ¶¶ 10-13. Over 15,000 pages of documents were produced, including voluminous spreadsheets produced by AT&T, and a total of 11 depositions were taken. Id. at ¶¶ 14-15, 21-23. Both Peerless and AT&T submitted expert reports. Id. at ¶¶ 18-20. Following the close of discovery, AT&T filed a Daubert motion, seeking to strike the damages opinions of Peerless' expert and the parties briefed a summary judgment motion. Id. at ¶¶ 24-25; see also ECF Nos. 138, 184. I held two oral arguments, one to address AT&T's Daubert motion and a second argument to address Peerless' summary judgment motion. McAleenan Decl. ¶ 26; see also ECF Nos. 215, 221.

## DISCUSSION

A. Legal Standards

"In the American system of justice, 'the prevailing litigant is ordinarily not entitled to collect a reasonable attorneys' fee from the loser.'" Fresno Cty. Employees' Ret. Ass'n v. Isaacson/Weaver Fam. Tr., 925 F.3d 63, 67 (2d Cir. 2019) (quoting Alyeska Pipeline Servs. Co. v. Wilderness Soc'y, 421 U.S. 240, 247 (1975)). But "parties may agree by contract to permit

---

[1] Familiarity with the R&R and Judge Marrero's subsequent opinion is presumed. See ECF Nos. 225, 240. Only those facts relevant to AT&T's instant motion for attorneys' fees are summarized below. Additionally, page citations herein to documents filed on the electronic docket ("ECF") are to the original pagination in those documents.

recovery of attorneys' fees, and a federal court will enforce contractual rights to attorneys' fees if the contract is valid under applicable state law." U.S. Fid. & Guar. Co. v. Braspetro Oil Servs. Co., 369 F.3d 34, 74 (2d Cir. 2004) (citation omitted). "Under New York law, a contract that provides for an award of reasonable attorneys' fees to the prevailing party in an action to enforce the contract is enforceable if the contractual language is sufficiently clear." NetJets Aviation, Inc. v. LHC Commc'ns, LLC, 537 F.3d 168, 175 (2d Cir. 2008).

"When a prevailing party seeks fee-shifting pursuant to a contract, 'the court will order the losing party to pay whatever amounts have been expended by the prevailing party, so long as those amounts are not unreasonable.'" Fleisig v. ED&F Man Capital Markets, Inc., 2021 WL 4459120, at *2 (S.D.N.Y. Sept. 29, 2021) (quoting F.H. Krear & Co. v. Nineteen Named Trustees, 810 F.2d 1250, 1263 (2d Cir. 1987)). "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). As the Second Circuit has made clear, "the lodestar—the product of a reasonable hourly rate and the reasonable number of hours required by the case—creates a 'presumptively reasonable fee.'" Millea v. Metro-North R.R. Co., 658 F.3d 154, 166 (2d Cir. 2011) (citing Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542, 542 (2010) and Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany, 522 F.3d 182, 183 (2d Cir. 2008)). Once a court calculates the lodestar, it may be adjusted based on "case-specific considerations" to arrive at a reasonable fee. Arbor Hill, 522 F.3d at 186.

"A reasonable hourly rate is a rate 'in line with prevailing rates in the community for similar services by lawyers of reasonably comparable skill, expertise and reputation.'" McDonald ex rel. Prendergast v. Pension Plan of the NYSA-ILA Pension Tr. Fund, 450 F.3d 91,

3

96 (2d Cir. 2006) (quoting Blum v. Stenson, 465 U.S. 886, 895 n. 11 (1984)). "[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." Torres v. City of New York, No. 18-CV-03644 (LGS), 2020 WL 4883807, at *2 (S.D.N.Y. Aug. 20, 2020) (quoting Hensley, 461 U.S. at 437). To meet that burden, "attorneys are required to keep and submit contemporaneous records with their fee applications, absent unusual circumstances outside the attorney's control." Restivo v. Hessemann, 846 F.3d 547, 591 (2d Cir. 2017).

Lastly, as the Supreme Court has warned, fee disputes "should not result in a second major litigation.'" Fox v. Vice, 563 U.S. 826, 838 (2011) (citation and internal quotation marks omitted). This is because "[t]he essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection." Id. As such, "trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." Id.; see also Restivo, 846 F.3d at 589 ("[T]rial courts need not, and indeed should not, become green-eyeshade accountants."). Ultimately, a district court has "broad discretion" in "award[ing] attorneys' fees under a valid contractual authorization." In re Goldstein, 430 F.3d 106, 110 (2d Cir. 2005) (citation omitted).

B. AT&T is entitled to an award of reasonable attorneys' fees and costs.

AT&T seeks an award of attorneys' fees in the amount of $1,218,830.25. McAleenan Decl. ¶ 28. The settlement agreement provides that in the event "any action . . . is brought to enforce or interpret the provisions of this Agreement . . . the prevailing Party shall be entitled to all of its costs in prosecuting or defending said action, including reasonable attorneys' fees." See ECF No. 183-1 at § F.5. Peerless concedes that the settlement agreement provides for the recovery of attorneys' fees and costs by the prevailing party. See ECF No. 252 at 1. And Peerless

4

does not contest that AT&T prevailed on the central claim in this dispute: whether AT&T breached the best efforts clause of the settlement agreement. Accordingly, AT&T, as the prevailing party, is entitled to reasonable attorneys' fees and costs.

1. *Reasonable Hourly Rates*

In calculating the lodestar, the Court first considers the hourly rate at which attorney's fees should be awarded. AT&T requests fees for work performed by six employees of the law firm of Duane Morris: two partners, Brian A. McAleenan and J. Tyson Covey; four associates, David McTaggart, Minhee Lee, Zev Grumet-Morris, and Nicole Mirjanich Moore; one e-discovery expert, Sean Robinson; and one paralegal, Al Knapp. See McAleenan Decl. ¶¶ 38, 46, 53, 55, 57-58. Peerless does not contest the hourly rates for any of these individuals, and as discussed below, the hourly rates are reasonable.

McAleenan performed the "majority" of the legal work in this case on behalf of AT&T. Id. at ¶¶ 38-39. He is a 1998 law school graduate with 20 years' experience representing AT&T in regulatory matters and intercarrier compensation disputes, like the instant case, and has significant knowledge of the telecommunications industry. Id. at ¶¶ 40-41. Duane Morris is a large, international law firm with over 900 lawyers. Id. at ¶ 37. McAleenan's hourly rate in this case was $600 per hour, which reflects a material discount off of Duane Morris' standard rates pursuant to a billing arrangement the firm has with AT&T. Id. at ¶¶ 42-43. The other partner on the case was J. Tyson Covey, a highly experienced telecommunications lawyer with over 25 years representing AT&T. Id. at ¶¶ 48-49. Covey's hourly rate was also $600. Id. at ¶ 51. Both McAleenan and Covey are experienced commercial litigators affiliated with a large law firm, and their requested hourly rate of $600 is in line with the prevailing rates for comparable attorneys in this District. See Fleisig, 2021 WL 4459120, at *3 (awarding hourly rate of $1000 for senior

partner at large law firm); Wells Fargo Bank as Tr. for the Benefit of the Holders of COMM 2015-LC19 Mortg. Tr. Com. Mortg. Pass-Through Certificates v. 5615 N. LLC, No. 20-CV-2048 (VSB) (KHP), 2023 WL 7394340, at *8 (S.D.N.Y. May 4, 2023) (awarding average hourly rate of $606.81 for partner work in foreclosure action). Moreover, resolution of the instant dispute required skilled litigators with expertise in the telecommunications industry. Opposing summary judgment required AT&T's counsel to produce, review, and analyze complex and voluminous traffic data pertaining to telecommunications services, which necessitated a thorough understanding of the telecommunications industry and extensive expert analysis. Counsel for AT&T was knowledgeable and skilled, and their expertise was apparent during motion practice, briefing, and at oral argument.

AT&T was also represented in this case by several associates. McTaggart, who has practiced law since 2003, commenced the case as an associate but was promoted to special counsel in July 2022. See McAleenan Decl. ¶ 47. He is an experienced commercial litigator seeking an hourly rate of $573.75. Id. Lee and Grumet-Morris, both of whom had primary responsibility for conducting the document review in this case, are associates with an hourly rate of $311.25 and $273.75, respectively. Id. at ¶¶ 53-54. Moore, another associate who performed legal research and assisted in drafting pleadings, seeks an hourly rate of $345. Id. at ¶¶ 55-56. All of these rates are fair and reasonable and consistent with rates awarded by courts in this District for attorneys with similar experience. See, e.g., 5615 N. LLC, 2023 WL 7394340, at *8 (awarding average associate hourly rate of $454.48 in foreclosure action); U.S., ex rel. Fox Rx, Inc. v. Omnicare, Inc., No. 12-CV-275 (DLC), 2015 WL 1726474, at *2-3 (S.D.N.Y. Apr. 15, 2015) (approving hourly rate of $631.75 for eighth-year associate and $541.50 for fourth-year associate); HSBC Bank USA, N.A. v. PAKS Holdings, LLC, No. 19-CV-10193 (PGG) (JLC),

2021 WL 667661, at *7 (S.D.N.Y. Feb. 22, 2021) (approving hourly rates of $571.50 and $423.00 in breach-of-contract case).

Finally, AT&T seeks an hourly rate of $292.50 for Robinson, an e-discovery expert who was responsible for maintaining the electronic document databases used in this case, and an hourly rate of $200 for Knapp, a paralegal. McAleenan Decl. ¶¶ 57-58. As to Knapp, his hourly rate is commensurate with the hourly rate typically awarded to paralegals at large law firms in this District. See 1979 Fam. Tr. Licensor, LLC v. Darji, No. 19-CV-4389 (VEC), 2020 WL 9596279, at *1 (S.D.N.Y. Sept. 30. 2020) (noting that courts in this District typically approve paralegal rates between $150 and $200). As to Robinson, courts have "generally analogized" such litigation support personnel "to paralegals and awarded comparable hourly rates." Abraham v. Leigh, No. 17-CV-5429 (KPF), 2020 WL 5512718, at *10-11 (S.D.N.Y. Sept. 14, 2020) (awarding $250 to e-discovery expert who billed time in connection with matter related to sanctioned documents); Gulino v. Bd. of Edu. of City School Dist. of City of N.Y., No. 96-CV-8414 (KMW), 2022 WL 17478295, at *4 (S.D.N.Y. Nov. 30, 2022) (recommending $175 hourly rate for litigation support professional); see also VR Optics, LLC v. Peloton Interactive, Inc., No. 16-CV-6392 (JPO), 2021 WL 1198930, at *5 (S.D.N.Y. Mar. 30, 2021) (noting that courts in this District "have been loath" to award billing rates "in excess of $200" for "support staff"). Robinson's rate is nearly $100 above the typical hourly rate of $200 that courts in this District award paralegals and $42.50 above the $250 hourly rate awarded to an e-discovery professional in Abraham. As such, AT&T's requested hourly rate for Robinson is reduced to $250 for his 18.5 hours of work on this case, as that rate is in line with rates typically awarded similar

professionals. Given the reduction in the requested hourly rate for Robinson, the amount of attorneys' fees awarded to AT&T are $1,218,044.[2]

2. *Reasonable Hours Expended*

"Applications for fee awards should generally be documented by contemporaneously created time records that specify for each attorney[ ] the date, the hours expended, and the nature of the work done." Matusick v. Erie Cty. Water Auth., 757 F.3d 31, 64 (2d Cir. 2014) (citation omitted). "Hours that are excessive, redundant, or otherwise unnecessary are to be excluded" from the tally. Kirsch v. Fleet St., Ltd., 148 F.3d 149, 173 (2d Cir. 1998) (citations omitted). If the court concludes that hours are excessive, the court has "discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application." Id. (internal quotation marks omitted). Similarly, records or other documentation that "are too vague to sufficiently document the hours claimed" may also warrant a reduction in hours claimed. Barclays Capital Inc. v. Theflyonthewall.com, No. 06-CV-4908 (DLC), 2010 WL 2640095, at *4 (S.D.N.Y. June 30, 2010) (citing Kirsch, 148 F.3d 149, 172-73).

Peerless asks the Court to exclude $183,490.88 in fees for 358.3 hours of work, contending that the time entries supporting those fees are vague and do not provide sufficient information to permit the Court to assess the reasonableness of the work performed. See ECF No. 252-1; see also ECF No. 252 at 4-6. The Court has reviewed in camera the unredacted billing records for AT&T. See ECF No. 259. The time entries that Peerless contends are vague or

---

[2] This number was calculated by first subtracting the requested fees for Robinson at his $292.50 hourly rate ($5,411.25) from the total amount of attorneys' fees requested by AT&T ($1,218,830.25), resulting in an amount of $1,213,419. The amount of fees awarded for Robinson at the hourly rate of $250 ($4,625) was then added to $1,213,419 to arrive at the total amount of attorneys' fees awarded to AT&T ($1,218,044).

ambiguous are neither when reviewed without redactions, as the Court has done. The unredacted time entries include sufficient information to permit the Court to assess the reasonableness of the work performed. See Omnicare, Inc., 2015 WL 1726474, at *3. A handful of time entries contain a bare-bones description of the work performed, such as "Prepare for same" or "finalize response for filing." But for those entries, a review of the other time entries for the same day, as well as the docket and the case's procedural history, supplement the bare-bones description and viewed collectively, make it reasonably clear to the Court the nature of the work performed.

Peerless also asks the Court to exclude AT&T's fees associated with its Daubert motion, arguing that AT&T's efforts to exclude Peerless' expert were unsuccessful. See ECF No. 252 at 6-7. But even if the motion proved unsuccessful, it was not frivolous. And as the Second Circuit has indicated, whether a party may recover fees for a motion turns on whether the motion was frivolous. See Seigal v. Merrick, 619 F.2d 160, 164-65 (2d Cir. 1980); see also Big R Food Warehouses v. Local 338 RWDSU, 896 F. Supp. 292, 298 (E.D.N.Y. 1995) (allowing recovery of fees associated with an unsuccessful motion for default judgment where "there was no suggestion that the motion was frivolous"). Having considered and ruled on AT&T's Daubert motion, see ECF No. 224, it was plainly not frivolous.

After reviewing the time entries in the unredacted billing records, the Court concludes that the time spent by AT&T's counsel on this matter was reasonable. The time entries are clear and substantive, and they show that AT&T's counsel spent an appropriate amount of time defending this action, including by responding to Peerless' summary judgment motion, moving to strike portions of the expert declaration of Peerless' expert, James Webber, moving to preclude testimony by Webber, and responding to Peerless' objections to the R&R, all of which were reasonable undertakings.

C. <u>AT&T is entitled to recover its expert fees.</u>

AT&T requests recovery of $382,051.90 in fees paid for work performed by three experts in this matter. <u>See</u> ECF No. 245 at 9-11. Peerless does not dispute that the settlement agreement permits recovery of costs incurred in prosecuting this action, including fees paid by AT&T to expert witnesses.

AT&T engaged Blaine Gilles, a telecommunications consultant, who prepared an expert report explaining the nature of least cost routing ("LCR"), described the relevant industry standards, and opined on AT&T's compliance with those standards. McAleenan Decl. ¶¶ 61-64. Gilles' hourly rate was $300, and he received a total of $24,525 in compensation from AT&T for his work on this case. <u>Id.</u> at ¶¶ 65-66. AT&T also retained Steven Turner, an engineer, consultant, and testifying expert for FTI Consulting ("FTI"), who authored a report addressing Peerless' transit billing problems; authored a rebuttal expert report in which he analyzed the data related to AT&T's LCR program; and submitted a declaration in response to the declaration of Peerless' expert. <u>Id.</u> at ¶¶ 67-70. Turner's hourly rate was $800 in 2021 and $965 in 2022. <u>Id.</u> at ¶ 75. Additionally, AT&T retained Brian Pitkin, who has experience with inter-carrier compensation disputes, as an expert from FTI. <u>Id.</u> at ¶ 73; <u>see also</u> ECF No. 256, Decl. of Brian F. Pitkin ("Pitkin Decl.") ¶¶ 3-4. Pitkin helped author the report on transit billing issues submitted by Turner and also submitted a rebuttal expert report in which he identified flaws in the report of Peerless' expert. McAleenan Decl. ¶ 74. Pitkin's hourly rate was $750 in 2021 and $825 in 2022. <u>Id.</u> at ¶ 75. Supporting the work of Turner and Pitkin where other individuals at FTI, including Brandon Timbrook. Timbrook, an analyst at FTI, performed the vast bulk of the labor-intensive data analysis in this case, at an hourly rate of $425. Pitkin Decl. ¶ 5. In total, AT&T incurred $357,526 in fees for Turner's and Pitkin's work. McAleenan Decl. ¶ 75. AT&T

submitted a declaration from Pitkin who attests that FTI's rates on this matter were consistent with the rates other FTI clients paid during the same time period for matters of similar complexity. Pitkin Decl. ¶ 5.

"Courts in this district assess the reasonableness of expert fees using the same method they do for attorneys' fees—by first multiplying the reasonably hourly rate by the reasonable number of hours expended." Themis Cap. v. Democratic Republic of Congo, No. 09-CV-1652 (PAE), 2014 WL 4379100, at *9 (S.D.N.Y. Sept. 4, 2014) (quoting Matteo v. Kohn's Dep't Stores, Inc., No. 09-CV-7830 (RJS), 2012 WL 5177491, at *5 (S.D.N.Y Oct. 19, 2012)). To determine a reasonable rate for experts, courts consider: "(1) the witness's area of expertise; (2) the education and training that is required to provide the expert insight that is sought; (3) the prevailing rates for other comparably respected available experts; (4) the nature, quality and complexity of the discovery responses provided; (5) the cost of living in the particular geographic area; (6) any other factor likely to be of assistance to the court in balancing the interests implicated by Rule 26; (7) the fee being charged by the expert to the party who retained him; and (8) fees traditionally charged by the expert on related matters." Bak v. Metro-N. R.R. Co., No. 12-CV-3220 (TPG), 2017 WL 496084, at *2 (S.D.N.Y. Feb. 7, 2017).

Peerless argues that the rates charged by Pitkin and Turner are excessive, drawing a comparison to the rates charged by AT&T's attorneys. See ECF No. 245 at 8. But a comparison to the rates charged by AT&T's legal team is inappropriate because, as McAleenan explains, AT&T received a "material discount" from Duane Morris's standard rates. McAleenan Decl. ¶ 43. Indeed, Mr. McAleenan, an attorney with over 22 years' experience as a commercial litigator at a large New York City law firm, billed at an hourly rate of $600, McAleenan Decl. ¶¶ 40-42–a rate below the rate typically awarded by courts in this District to attorneys with similar

experience in complex commercial disputes like this one. See Nichols, 499 F. Supp. 3d at 41 (noting that Judge Cote "observed" that the "average partner billing rate in this District was $942" in 2015 and approving hourly rate of $850 for partner work).

Gilles' requested rate, Turner's 2021 requested rate, and Pitkin's 2021 and 2022 requested rates are reasonable when examined under the relevant factors. As he details in his declaration, Pitkin has over 25 years' experience as a testifying expert in the telecommunications field and has extensive experience specifically in the area of intercarrier compensations, which was the dispute here. Pitkin Decl. ¶¶ 4, 7. Pitkin further explains that FTI professionals, like himself, typically demand higher rates because of their industry-specific experience, and the hourly rates charged to AT&T here are "consistent with the rates other FTI clients paid during the same time period for matters of similar size, complexity, and subject-matter." Pitkin Decl. ¶¶ 7-9. For his part, Turner is an engineer, consultant, and testifying expert at FTI with over 30 years' experience in the telecommunications industry and with particular knowledge about billing for transit services. McAleenan Decl. ¶¶ 67, 69. Gilles also has extensive experience in the telecommunications industry, particularly as it relates to least-cost routing programs, like those at issue in this case. McAleenan Decl. ¶¶ 61-63. Additionally, AT&T had to rely on expert testimony because of the technical issues raised by Peerless' motion to enforce the settlement agreement. And the expert testimony was used by AT&T both to establish its defense to Peerless' claim and to demonstrate the deficiencies in Peerless' own analysis and expert testimony. Finally, the hourly rates for Gilles ($300), Pitkin ($750 and $825) and Turner's hourly rate in 2021 ($800) are commensurate with rates approved for experts by courts in this District. See Gulino, 2023 WL 3689601, at *5 (approving $795 hourly rate for expert). In 2022, Turner billed at an hourly rate of $965. That rate is above the rate typically approved by courts in this

District and AT&T has not pointed to another case where a court in this District awarded an expert an hourly rate of nearly $1,000. Accordingly, Turner's hourly rate for all hours billed in 2022 is reduced to $800, the rate he billed in 2021.

Peerless also contends that FTI's invoices, demonstrating the number of hours expended by the experts, has vague descriptions of the work performed. See ECF No. 252 at 8-9. But to the extent Peerless points to examples of vague time entries, those time entries are not vague when viewed in the context of the other time entries by the same expert for the same day. For example, on May 6, 2021, Pitkin billed 0.70 hours of time for "Call with counsel." See ECF No. 258-7 at 10. Although the time entry does not explain what the call was about, Pitkin also billed time on May 6 for "internal call to review data." Id. It is thus evident from the adjoining time entry that the call with counsel on May 6 was to discuss the experts' review of the telecommunications data in this case, which would have been appropriate work given that the docket entries from around this time period indicate that the parties were still engaged in fact discovery, see ECF No. 133. See Rand-Whitney Containerboard v. Town of Montville, No. 96-CV-413 (HBF), 2006 WL 2839236, at *17 (D. Ct. Sept. 5, 2006) (examining adjoining time entries to determine whether objected-to entries were vague in attorney billing records).

D. AT&T's additional submission for expert fees.

On November 21, 2023, AT&T filed a letter motion, seeking permission to submit an additional invoice for $46,481.50 that was not included in its fee application but was for expert fees incurred through July 2022. See ECF Nos. 260, 260-1. When preparing its fee application, AT&T's counsel mistakenly assumed that all of the expert invoices from FTI were paid by counsel (not AT&T) and thus counsel overlooked this specific invoice, which AT&T itself paid in October 2022. See ECF No. 260 at 1-2. AT&T contends that the error amounts to excusable

13

neglect and it therefore should be permitted to supplement its fee application with the additional invoice. Id. Conversely, Peerless objects to consideration of the invoice, arguing that AT&T has not shown its neglect was excusable, and Peerless would be prejudiced from having to pay additional fees that it did not have an opportunity to challenge. See ECF No. 261.

Under Rule 6(b), the Court has discretion to consider the late invoice if AT&T can demonstrate that the failure to submit the invoice with its application resulted from excusable neglect. See Fed. R. Civ. P. 6(b)(1)(B); see also Powercap Partners LLC v. Fleischmann, No. 20-CV-3428 (RRM) (RML), 2023 WL 2711316, at *3 (E.D.N.Y. Mar. 30, 2023). "Mere inadvertence, without more, *can* in some circumstances be enough to constitute 'excusable neglect' justifying relief under Rule 6(b)(1)(B)." Alexander v. Saul, 5 F.4th 139, 154 (2d Cir. 2021) (quoting Petaway v. Osden, 827 F. App'x 150, 152 (2d Cir. 2020) (emphasis in original)); see also Smith v. Baugh, No. 16-CV-906V(F), 2022 WL 268824, at *3 (W.D.N.Y. Jan. 28, 2022) ("[L]aw office failures to comply with required time-tables in civil cases may be excused where such failures arise from excusable neglect."). The Court has "wide discretion" to grant a request under Rule 6(b). Alexander, 5 F.4th at 154.

AT&T's mistake constitutes excusable neglect under the circumstances of this case. First, consideration of the additional invoice in ruling on AT&T's attorneys' fee motion has not delayed resolution of the motion. AT&T submitted the invoice while the Court was in the midst of considering the fee application.

Second, there is no evidence of bad faith on the part of AT&T. As counsel explained, in the normal course of the firm's relationship with AT&T, counsel was responsible for paying FTI's invoices. ECF No. 260 at 2. As such, counsel calculated the amount of expert fees paid by AT&T to FTI using the invoices counsel had received and paid, not realizing that AT&T had

14

received and paid an invoice from August 2022. Id. Counsel discovered this mistake when it was responding to the Court's order, asking for unredacted invoices for in camera review. See ECF No. 259.

Finally, Peerless has been afforded an opportunity to respond and to challenge the reasonableness of the work billed in the late-filed invoice. See ECF No. 261. Peerless objected to consideration of the invoice and has pointed out that the description of time billed by Pitkin in this invoice is too vague and the hourly rates of the experts reflected on the invoice are unsupported. See ECF No. 261 at 3. These are the same arguments that Peerless raised in attacking the timely submitted invoices that formed the basis of AT&T's expert fee application.

Although AT&T is permitted to supplement its application with this late invoice, Peerless is correct that the descriptions of work performed by Pitkin on July 5, 2022, July 12, 2022, and July 14, 2022, are impermissible vague. For those days, Pitkin billed a total of 2.1 hours for "Discussion." See ECF No. 260-1 at 5. There is no additional information provided for those time entries. Nor is there any other work performed by Pitkin on those days, such that the Court could infer the substance of the "discussion" Pitkin had and its relation to the case. In short, Pitkin's one-word description of the work he performed is too vague to permit the Court to review the reasonableness of the time expended. As such, AT&T is not entitled to an award of Pitkin's fees for the 2.1 hours billed between July 5, 2022, and July 14, 2022, which amounts to $1,732.50 at Pitkin's 2022 hourly rate of $825. Pitkin did provide an adequate description of the work he performed on July 1, 2022, and the time expended for that work is reasonable. See ECF No. 260-1 at 5. Further, the other time entries in the invoice, for work performed by other individuals at FTI, include detailed descriptions that permit the Court to assess the reasonableness of the work performed. A review of those entries demonstrates that the time

15

expended was reasonable. As such, AT&T is entitled to $44,749 in expert fees for this invoice. That amount does not include the 2.1 hours of time ($1,732.50) billed by Pitkin in July 2022.

In sum, AT&T is entitled to an award of expert fees in the amount of $426,305.90.[3]

E. AT&T is entitled to recover its other costs.

The parties collectively deposed 11 witnesses in this case, and AT&T seeks the costs it expended for obtaining the transcripts of those depositions ($15,857.74). McAleenan Decl. ¶¶ 21, 78. Additionally, AT&T expended $480 in obtaining transcripts of oral arguments cited in its briefing. Id. at ¶ 78. In total, AT&T seeks recovery of $16,337.74 in transcript costs. Id. at ¶ 79. Additionally, AT&T requests $2,636.02 in travel costs associated with Mr. McAleenan's travel to New York from Chicago for appearances at two in-person oral arguments in this case. McAleenan Decl. ¶¶ 80-82.

Peerless does not challenge these costs and the costs sought by AT&T are recoverable under the settlement agreement. See ECF No. 183-1 at § F.5 (providing that a prevailing party "shall be entitled to all of its costs in prosecuting or defending" an action to enforce the terms of the agreement). Further, these expenses are properly included in an award of costs. See Rubenstein v. Advanced Equities, Inc., No. 13-CV-1502 (PGG), 2015 WL 585561, at *9 (S.D.N.Y. Feb. 10, 2015) (awarding attorney travel expenses); Gonzalez v. Ninth Ave. Food

---

[3] This amount was calculated as follows: Turner billed three hours in 2022 at the $965 rate, which the Court reduced to an hourly rate of $800. See ECF No. 258-7 at 59. From AT&T's requested expert fees of $382,051.90, the requested fees for Turner ($2895) were subtracted, resulting in an amount of $379,156.90. The fees for Turner's 2022 work at the reduced hourly rate of $800 ($2400) were added to $379,156.90, yielding an amount of $381,556.90. Finally, the amount of the late invoice ($46,481.50) was reduced by the $1,732.50 billed by Pitkin in July 2022, yielding an amount of $44,749, which was added to $381,556.90 to reach the total award of expert fees to AT&T.

Corp., No. 14-CV-7603 (VEC), 2017 WL 11568379, at *2 (S.D.N.Y. Sept. 19, 2017) (awarding transcript costs). AT&T is thus entitled to an award of costs in the amount of $18,973.76.

## CONCLUSION

For the reasons discussed, AT&T is entitled to an award of attorneys' fees in the amount of $1,218,044; an award of costs in the amount of $18,973.76; and an award of expert fees in the amount of $426,305.90. The Clerk of Court is respectfully directed to terminate the motions at ECF Nos. 243 and 260.

**SO ORDERED.**

DATED:   New York, New York
         January 2, 2024

_____
VALERIE FIGUEREDO
United States Magistrate Judge